UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

CATHERINE S. EDWARDS                                    CASE NO. 17-10822
    DEBTOR                                                        CHAPTER 7

AMERICA'S HOME PLACE, INC.
    PLAINTIFF

VERSUS                                                              ADV. NO. 17-1053

CATHERINE S. EDWARDS
    DEFENDANT

## MEMORANDUM OPINION

America's Home Place, Inc. ("AHP") objected to debtor Catherine Edwards's discharge and also sought to have her debt to it declared nondischargeable.[1] This memorandum opinion explains the reasons for denying the debtor's discharge.[2]

### A Preliminary Matter—What Was Tried

AHP's amended complaint objected to the debtor's discharge under only 11 U.S.C. §727(a)(4)(A) and to dischargeability under §523(a)(2)(A) and (B) alone.[3] But in its pretrial brief, AHP without leave of court added allegations challenging Edwards's right to a discharge under §727(a)(2)(B), (a)(3) and (a)(6), and urging that her debt was nondischargeable under §523(a)(3), (a)(4) and (a)(6).[4] Amendments before trial, but more than twenty-one days after

---

[1] Amended Complaint [P-5].

[2] This memorandum opinion comprises findings of facts and conclusions of law. Fed. R. Civ. P. 52, made applicable by Fed. R. Bankr. P. 9014 and 7052. All the parties' arguments have been considered, including any this opinion does not specifically address.

[3] Amended Complaint [P-5].

[4] AHP's Pretrial Brief [P-79].

service of the complaint, require leave of court or written consent of the opponent.[5] AHP did not request or receive leave of court to amend, and nothing in the record suggests that Edwards consented to an amendment.

Although Fed. R. Civ. P. 15(b) provides for instances when issues not raised by the pleadings are tried by implied consent, the rule does not give plaintiffs *carte blanche* to add new allegations before trial. The Fifth Circuit held in *Moody v. FMC Corp.*[6]:

> A party does not consent to try new issues unless he could reasonably be expected to recognize that a new issue entered the case. *Domar Ocean Transport v. Independent Refining Co.,* 783 F.2d 1185, 1188 (5th Cir.1986). Nor does a party consent to try a new issue by introducing evidence or failing to object to evidence when the evidence is relevant to pleaded issues in the case. *Jimenez v. Tuna Vessel Granada,* 652 F.2d 415, 422 (5th Cir.1981); *International Harvester Credit Corp. v. East Coast Truck and R.V. Sales, Inc.,* 547 F.2d 888, 890 (5th Cir.1977).[7]

Edwards is a *pro se* defendant who could not be reasonably expected to recognize that new issues entered the case after trial was scheduled, especially because all the evidence related only to AHP's claims set forth in the complaint under sections 727(a)(4)(A), 523(a)(2)(A) and 523(a)(2)(B). The *pro se* defendant would be prejudiced by an amendment urged in a pretrial memorandum filed on the eve of trial. Accordingly, AHP's allegations under Bankruptcy Code section 727(a)(2)(B), (a)(3) and (a)(6) and those seeking judgment under section 523(a)(3), (a)(4) and (a)(6) in its pretrial brief, are dismissed.

---

[5] Fed. R. Civ. P. 15(a)(2), made applicable to this proceeding by Fed. R. Bankr. P. 7015.

[6] *Moody v. FMC Corp.,* 995 F.2d 63 (5th Cir. 1993).

[7] *Id.* at 65-66.

## I. Findings of Fact[8]

Because the debtor's interest in immovable property in Livingston Parish plays a role in the outcome of this dispute, how she came to own it merits some detail. Edwards and Michael Scurria bought 2.24 acres of immovable property in Livingston Parish for $134,000.[9] Two years later Edwards and Scurria agreed in a Contract to Partition Property & Purchase Agreement that Scurria would "purchase the back acreage" for $200,000.00 and Edwards would "retain the 'front acreage.'"[10] Their agreement was conditioned on Scurria's refinancing the debt: "The actual Partition and Transfer of the Property is to be executed at the time the property is re-financed or re-mortgaged; [Scurria] will be given a couple of years to secure the financing."[11] Neither party offered evidence relating to Scurria's efforts to refinance the obligation and Edwards and Scurria remained co-owners of the property when the bankruptcy commenced.

### A. State Court Proceedings

Edwards began dealing with AHP in 2009, after a fire heavily damaged her home. Edwards's fire insurer paid $156,080.38 for the loss, which was held in escrow by Edwards's mortgage company.[12] She hired AHP to restore the property but, unhappy with AHP's

---

[8] The parties were ordered to file and exchange exhibits no later than September 17, 2020 at 12:00 noon and admonished that "[e]xcept for good cause, the court will not permit the introduction of exhibits not exchanged and submitted to the court before trial." Order Setting Trial and Related Deadlines [P-73]. Because the debtor submitted exhibits the morning of trial without an explanation of her failure to comply with the scheduling order, all her exhibits were excluded.

[9] December 29, 2004 Act of Cash Sale and Livingston Parish Recordation [AHP Exhibit P-1]. The sale was recorded in the Livingston Parish conveyance records on January 4, 2005. Scurria met Edwards through her daughter, with whom he had a child.

[10] December 12, 2006 Contract to Partition Property & Purchase Agreement [AHP Exhibit P-4].

[11] *Id.*

[12] Check dated December 11, 2009 for $156,080.36 made by Allstate and payable to Edwards and GMAC Mortgage LLC its successors and assigns [AHP Exhibit P-30A]. The mortgage has since been transferred to Ocwen Loan Servicing, LLC.

performance, sued it in 2011 for breach of contract, dissolution and rescission of contract and damages. AHP countered by filing a $100,142.96 lien against the immovable property.[13] The suit ended in a settlement requiring AHP to release its lien within ten days and Edwards to pay AHP $75,000 within thirty days.[14] Although the state court judge made clear that the transcript of the hearing would become an enforceable judgment,[15] neither party complied with the settlement.[16]

Later AHP moved to enforce the settlement, alleging that Edwards had not fulfilled her part of the agreement. That dispute too ended in a settlement, which Edwards and counsel for AHP dictated into the state court record in 2016 but did not reduce to writing.

### B. Debtor's Bankruptcy Case

The parties continued to squabble over implementation of the settlement for several months afterward; their litigation ended only when Edwards filed chapter 13 on August 23, 2017. Edwards declared in her original schedules that she was the sole owner of the immovable

---

[13] Lien recorded November 28, 2011 in Livingston Parish mortgage records [AHP Exhibit P-7]; *see also* Act of Correction [AHP Exhibit P-7, p. 23].

[14] Edwards and AHP agreed on the record in state court in August 2016 that within ten days, AHP would cancel its lien and within thirty days, Edwards would pay AHP $75,000 and AHP would deliver construction items to Edwards. Transcript of hearing held August 2, 2016 in case no. 131673, Twenty-First Judicial District Court, Parish of Livingston [AHP Exhibit P-10].

[15] *Id.* at p. 6, ll. 7-20. *See* La. Civ. Code art. 3072 ("A compromise shall be in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings.")

[16] AHP's counsel argued at the December 12, 2016 state court hearing that it did not intend to cancel its lien until the parties entered a written consent judgment that it could substitute for the original lien. Transcript of hearing held December 12, 2016 in *Edwards v. America's Home Place, Inc*., case no. 131673, Twenty-First Judicial District Court, Parish of Livingston [AHP Exhibit P-10, p. 11]**.** Edwards maintained at that hearing that she could not get a mortgage to pay the $75,000 because the August 2016 flood reduced her income. [*Id.* at 10-11]. At trial in this court, Edwards claimed that she could not get a mortgage until AHP cancelled its lien.

property and listed its value at $150,000.[17]  The original schedules did not list Scurria as a co-owner nor did they mention the Contract to Partition Property & Purchase Agreement.

Although the mortgage records reflect that AHP has a $100,142.96 lien, Edwards scheduled AHP's debt as two unsecured claims, for $75,000 and $100,142.[18]  This court at a 2018 hearing valued the property at $248,000.  After the hearing, Edwards amended schedule A/B to disclose that Scurria co-owned the property and that her half interest was worth $142,000.00.[19]

AHP's proof of claim 8 asserted a $75,000 secured claim.  AHP's later proof of claim contended that Edwards owed it $77,525, apparently differing from the earlier claim only in adding legal interest.

### C.  Debtor's Case Converts to Chapter 7

AHP objected to confirmation of Edwards's chapter 13 plan for failing to provide for AHP's secured claim and undervaluing the collateral.[20]  The chapter 13 trustee also objected, arguing that Edwards misrepresented her interest in the property both in her schedules and also at the meeting of creditors.[21]  The court concluded that the proposed plan was not feasible and converted the case to chapter 7 on June 23, 2018.[22]

---

[17] Debtor's schedule A/B [Case no. 17-10822, P-5; AHP Exhibit P-17].

[18] Debtor's schedule E/F [Case no. 17-10822, P-5, AHP Exhibit P-17].

[19] Amended Schedules A/B [Case no. 17-10822, P-55; AHP Exhibit P-39].

[20] AHP's Objections to Confirmation [P-29, 36].

[21] Chapter 13 trustee's Objection to Confirmation [P-46].

[22] Order Converting Case to Chapter 7 [P-57].

During the chapter 7 case, AHP obtained relief from the automatic stay to enforce its state court settlement with Edwards,[23] after which the state court ordered 1) Edwards to pay AHP $75,000; 2) AHP to cancel its lien on Edwards's property within ten days; 3) AHP to provide Edwards certain construction items; 4) AHP to pay costs of the independent inspector; 5) confidentiality of the parties; and 6) that the parties not disparage each other.[24]

## II. Analysis

### A. Objection to Discharge

AHP cites Bankruptcy Code section 727(a)(4)(A) in support of its objection to Edwards's discharge. That statute commands the bankruptcy court to deny a debtor's discharge if "in connection with the case" the debtor "knowingly and fraudulently" "made a false oath or account." "False statements in the debtor's schedules or false statements by the debtor during the proceedings are sufficient to justify denial of discharge."[25]

The Fifth Circuit has held that "'the integrity of the bankruptcy system depends on full and honest disclosure' by debtors and [ ] 'it is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible.'"[26]

> Full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief [ ] is essential, because the schedules "serve the important purpose of insuring that adequate information is available for the Trustee and creditors

---

[23] Amended Motion for Relief from Automatic Stay [Case no. 17-10822, P-73]; order dated December 6, 2018 Granting Relief from Automatic Stay [Case no. 17-10822, P-76].

[24] February 25, 2019 Judgment recorded February 28, 2019 [AHP Exhibit P-38].

[25] *The Cadle Co. v. Duncan (Matter of Duncan),* 562 F.3d 688, 695 (5th Cir. 2009) (citing *Beaubouef,* 966 F.2d at 178).

[26] *Asarco, L.L.C. v. Montana Resources, Inc.,* 858 F.3d 949, 958 (5th Cir. 2017) (quoting *Brown Manufacturing v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 208 (5th Cir. 1999)).

without need for investigation to determine whether the information provided is true."[27]

AHP contends that Edwards knowingly provided false information by:

1) representing in her schedules and plan that AHP was an unsecured, rather than a secured, creditor;

2) undervaluing AHP's collateral and misrepresenting her ownership interest;

3) failing to list the Contract to Partition Property & Purchase Agreement as an executory contract affecting the property;

4) failing to list a debt to Ocwen Loan Servicing, LLC ("Ocwen") as a monthly expense on Schedule J.

As the mover, AHP bears the burden of proving that (1) Edwards made a representation under oath; (2) the representation was false; (3) Edwards knew it was false; (4) Edwards made the representation with fraudulent intent; and (5) the representation was material to the bankruptcy case. [28] If AHP establishes a *prima facie* case, "then the burden shifts to [Edwards] to present evidence that [she] is innocent of the charged offense."[29] "Circumstantial evidence may be used to prove fraudulent intent, [ ] and the cumulative effect of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent."[30] "[T]he existence of more than one falsehood, together with [the debtor's]

---

[27] *Beaubouef*, 966 F.2d at 179 (citing *Messing v. Urban (In re Urban)*, 130 B.R. 340, 344 (Bankr. M.D. Fla. 1991)). Although *Beaubouef* referred to chapter 7 debtors and Edwards's case began under chapter 13, full disclosure is essential in all bankruptcy proceedings. *See, e.g., Love v. Tyson Foods, Inc.*, 677 F.3d 258 (5th Cir. 2012) (holding chapter 13 debtor could not benefit from an undisclosed cause of action).

[28] *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992).

[29] *Duncan,* 562 F.3d at 696.

[30] *Duncan*, 562 F.3d at 695.

failure to take advantage of the opportunity to clear up the inconsistences and omissions" [can] constitute[ ] reckless indifference to the truth and therefore, the requisite intent to deceive."[31]

### 1. Debtor's Representation that AHP's Claim is Unsecured

AHP's November 28, 2011 lien was filed against immovable property Edwards and Scurria co-owned the day she filed bankruptcy.[32] Edwards admitted at trial that she knew of AHP's lien on the property when she filed her schedules; she'd also admitted that to a state court judge on August 2, 2016 and again on August 15, 2017.[33] Still, Edwards scheduled AHP as an unsecured creditor. But AHP's lien did not necessarily render its claim secured in the bankruptcy case: that depended on the value of the property subject to the lien.

Indeed, Edwards's former counsel represented at the hearing on confirmation of her chapter 13 plan that AHP was scheduled as an unsecured creditor because after taking into account the balance on Ocwen's mortgage debt and the $35,000 Louisiana homestead exemption,[34] there was no equity in the immovable property to which AHP's lien attached. Specifically, the property value ($150,000) less Ocwen's mortgage ($165,619.57) and less the homestead exemption ($35,000) left no equity for AHP's lien.

Edwards, now *pro se*, persisted in arguing, both at trial and later in her post-trial brief and despite the court's valuing the property at $248,000.00, that AHP's claim is unsecured. She

---

[31] *Cadle Co. v. Mitchell (In re Mitchell)*, 102 Fed. Appx. 860, 862, 2004 WL 1448041 (5th Cir. 2004) (quoting *Beaubouef*, 966 F.2d at 178).

[32] Affidavit and Statement of Claim, Lien and Privilege [AHP Exhibit P-7, p. 3].

[33] Transcript of hearing on August 2, 2016 in case no. 131673, Twenty-First Judicial District Court, Parish of Livingston [AHP Exhibit P-10]; Transcript of hearing on August 15, 2017 in case nos. 131673 and 135662, Twenty-First Judicial District Court, Parish of Livingston [AHP Exhibit P-13].

[34] La. R.S. 20:1(B) ("The homestead is exempt from seizure and sale …. This exemption extends to thirty-five thousand dollars in value of the homestead, except in the case of obligations arising directly as a result of catastrophic or terminal illness ….").

apparently based that conclusion on two mistaken beliefs: first, that the lien attaches to only half of the property; and second, that she may claim a homestead exemption.[35] Hence according to her math, one-half the property value ($142,000,000) less the balance due on Ocwen's mortgage ($165,619.57) and the homestead exemption ($35,000), still leaves no equity to which AHP's lien could attach.

As to the first point, Edwards misunderstands the effect of AHP's lien. AHP's lien is over the entire property, not just half.[36]

Next, Edwards also mistakenly believes that she is entitled to a homestead exemption. Jurisprudence interpreting La. R.S. 20:1 holds that "property owned in indivision with others than a spouse and children of that spouse in a community regime, cannot qualify for the homestead exemption."[37] Thus, Edwards is not entitled to a homestead exemption on the land she owns with Scurria.[38]

Still, the evidence did not support a finding that Edwards scheduled AHP's claim as unsecured with fraudulent intent. Rather, Edwards's "testimony and the totality of the other evidence support a finding and conclusion that her errors and omissions [as to AHP's secured status] resulted from ignorance and reliance on advice of counsel, rather than fraudulent intent."[39]

---

[35] Edwards's Post-trial Brief, ¶ 7 [P-86].

[36] The lien provides that both Edwards and Scurria are indebted to AHP and describes the entire property. Affidavit and Statement of Claim, Lien and Privilege [AHP Exhibit P-7, p. 3]; Act of Correction [AHP Exhibit P-7, p. 23].

[37] *Brocato v. Traina (Matter of Brocato)*, 30 F.3d 641, 643 (5th Cir. 1994) (citing *Henderson v. Hoy*, 26 La. Ann. 156 (1874) and *Gulfco Finance Co. v. Browder*, 482 So.2d 1019 (La. App. 3d Cir. 1986)).

[38] Edwards's use of the correct value of the property ($248,000) less Ocwen's mortgage ($165,619.57) but without the homestead exemption, would leave $82,380.43 in equity to which AHP's lien could attach.

[39] *Tower Credit, Inc. v. Davis (In re Davis),* 2011 WL 1396851 at *5 (Bankr. M.D. La. 2011).

### 2. Debtor's Representations concerning her Interest in and the Value of the Property

Edwards listed $150,000.00 as the current value both of her interest in the Livingston Parish property, as well as the current value of the entire tract.[40] The schedules also describe the nature of her ownership interest as "Full."[41] Her schedules directly contradict her testimony at trial as well as the conveyance records: she owns only half of the property.

Edwards amended her schedules to show the value of her interest as $142,000 and that Scurria is co-owner of the property[42] only after AHP filed its complaint and after the valuation hearing. Nothing suggests that she would have accurately disclosed the nature of her ownership interest had AHP not sued her. Amendment of schedules only after their falsity is revealed does not relieve a debtor from the consequences of making a false oath.[43]

The evidence supports a finding that Edwards at all relevant times knew that Scurria owned half of the property and so falsely and knowingly misrepresented her ownership interest in the property. Edwards testified that she did not read the schedules before signing them, inviting the conclusion that she had no intent to defraud anyone. She testified that she relied on her lawyer to prepare the schedules.

---

[40] Schedule A/B filed on August 23, 2017 [Case 17-10822, P-5, p. 1].

[41] *Id.*

[42] Amended Schedule A/B [Case 17-10822, P-55].

[43] *Sholdra v. Chilmark Financial LLP (In re Sholdra),* 249 F.3d 380, 382 (5th Cir. 2001).

Edwards's testimony is inconsistent with the declaration she signed August 23, 2017 reciting that "Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct." [44]

The Fifth Circuit has held that a debtor's failure to check forms prepared by her attorney for accuracy is the "essence of a reckless disregard for the truth."[45]

Edwards pleads ignorance, testifying that she relied on her attorney to file the correct bankruptcy schedules. "[T]his defense is justified *only* when a debtor can show both reasonable and good faith reliance."[46] This debtor's reliance on counsel is not reasonable when she did not read the forms yet signed acknowledging that they were true and correct. Edwards is not entirely unfamiliar with legal documents and the importance of their accuracy. She worked for the Livingston Parish Clerk of Court for twenty-five years, during which she was a minute and "intake" clerk. Perhaps more significantly, Edwards is also a Louisiana notary public trained to prepare and examine legal documents, including documents relating to interests in immovable property.[47] She testified that she is familiar with public records, including mortgage and conveyance records. Her claim to have relied on her lawyer and in any case, that she was unaware of the significance of her misrepresentation in the schedules, is not credible. Thus, her reliance on counsel was neither reasonable nor in good faith. Edwards's effort to distance herself

---

[44] Declaration About an Individual Debtor's Schedules, Official Form 106Dec [Case 17-10822, P-5, p. 29]. Although Edwards's signature on the declaration is electronic, Edwards submitted to the court a declaration that her electronic signature has the same effect as her signature on the original documents. *See* Local Rule 1008-1.

[45] *Mitchell*, 102 Fed. Appx. at 863.

[46] *Tow v. Henley (In re Henley)*, 480 B.R. 708, 791 (Bankr. S.D. Tex. 2012) (emphasis in original).

[47] To be commissioned a notary by the Louisiana Secretary of State, Edwards was required to pass a rigorous written examination which "measures an applicant's critical and practical understanding of Louisiana notarial law and practice, including specific notarial acts and related instruments." Louisiana Secretary of State, *Get Exam Information* (Nov. 9, 2020, 9:56 AM), https://www.sos.la.gov/NotaryAndCertifications/PrepareForTheNotaryExam/GetExamInformation/Pages/default.aspx. *See also* La. R.S. 35:191(c)(3) and 35:191.1.

from her declarations in the schedules also evidences her reckless disregard for the truth concerning her interest in the property and its value.

In summary, the evidence established that Edwards possessed the intent requisite for loss of her discharge under 11 U.S.C. §727(a)(4)(A).

Materiality is the final element required to cause a debtor to lose the discharge under section 727(a)(4)(A). The Fifth Circuit concluded in *Matter of Duncan*[48] that

> the materiality of an omission is not solely based on the value of the item omitted or whether it was detrimental to creditors. Rather, the statement need only "bear [] a relationship to the bankrupt's business transactions or estate, or concern[] the discovery of assets, business dealings, or the existence and disposition of his property."[49]

Indeed, the Fifth Circuit has held that omission of assets from schedules is material even when the assets are found to be worthless.[50]

The extent of Edwards's ownership interest in the property and its value is material to the estate and creditors, especially AHP and the mortgage holder, Ocwen.

### 3. Edwards's Omission of the Contract to Partition Property & Purchase Agreement

Two years after they joined in buying the immovable property, Edwards and Scurria agreed that Scurria would "purchase the back acreage" for $200,000.00 and Edwards would "retain the 'front acreage.'"[51] Their agreement was conditioned on Scurria's ability to refinance the debt: "The actual Partition and Transfer of the Property is to be executed at the time the property is re-financed or re-mortgaged; the Buyer will be given a couple of years to secure the

---

[48] *See* note 23.

[49] *Duncan,* 562 F.3d at 695.

[50] *In re Pratt*, 411 F.3d 561,566-67 (5th Cir. 2005) (citing *Beaubouef*, 966 F.2d at 178).

[51] December 12, 2006 Contract to Partition Property & Purchase Agreement [Exhibit P-4].

financing."[52] Edwards's admission that she herself recorded the contract in the Livingston Parish conveyance records, her twenty-five year career in the Livingston Parish Clerk's Office and her status as a notary public support an inference that she knew the significance of the document in protecting her interest in the land.[53] Despite that, Edwards did not schedule the Contract to Partition Property & Purchase Agreement as an executory contract affecting the property.

Bankruptcy Code section 365 allows trustees to assume or reject executory contracts with court permission. "This provides a way for 'a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed.'"[54] But for a trustee to decide whether an agreement is burdensome or beneficial—or indeed, even executory—requires its disclosure. Edwards's failure to disclose the executory contract deprived the trustee of the opportunity to assume or reject it based on the best interest of the estate. That omission was material.

Her recklessness in not reading yet filing inaccurate schedules evidences her fraudulent intent.

### 4. Debtor's Failure to List the Ocwen Mortgage Debt Payment on Schedule J

Edwards and Scurria's jointly owned property is encumbered by a mortgage in favor of Ocwen, which Edwards scheduled as having a claim secured by the property though she did not

---

[52] *Id.*

[53] The first page of AHP Exhibit P-4, the Livingston Parish Clerk of Court's recording page showing that the contract was "Received From: CATHERINE EDWARDS."

[54] *Matter of Provide Meds, L.L.C.,* 907 F.3d 845, 851 (5th Cir. 2018).

list the mortgage payment as a monthly expense on Schedule J.[55]  Edwards explained the discrepancy by testifying that Scurria pays the Ocwen mortgage.

Edwards's scheduling of the Ocwen mortgage obligation on schedule A/B undercuts AHP's contention that she was trying to conceal that debt.  Nor did AHP offer any evidence contradicting the debtor's testimony that Scurria paid the mortgage debt, a reasonable explanation of its absence from schedule J.  Listing that obligation as an expense would have been misleading because Edwards does not pay it.

AHP did not prove that Edwards omitted Ocwen's mortgage as an expense on Schedule J with fraudulent intent.[56]

### 5. Conclusion of Objection to Discharge

The Fifth Circuit has held that "[T]he existence of more than one falsehood, together with [the debtor's] failure to take advantage of the opportunity to clear up the inconsistences and omissions" [can] constitute[ ] reckless indifference to the truth and therefore, the requisite intent to deceive."[57]

Edwards's original schedules include three knowingly false and material oaths or omissions: her claim to sole ownership of the Livingston Parish immovable property; the value of her interest in that property; and the omission of the Contract to Partition Property & Purchase Agreement.  Edwards amended the schedules to cure those deficiencies only after AHP filed its complaint to deny her discharge.  The evidence supports a finding and conclusion that Edwards's

---

[55] Schedule J [Case 17-10822, P-5, p. 24].

[56] *See Tower Credit, Inc. v. Davis (In re Davis)*, 2011 WL 1396851, at *5 (Bankr. M.D. La. 2011) (finding that that "errors and omissions resulted from ignorance and reliance on advice of counsel, rather than fraudulent intent").

[57] *Cadle Co. v. Mitchell (In re Mitchell)*, 102 Fed. Appx. 860, 862, 2004 WL 1448041 (5th Cir. 2004) (quoting *Beaubouef*, 966 F.2d at 178).

reckless indifference to the correctness of her schedules, the number of misrepresentations in or omissions from the schedules, and her failure to correct them betray Edwards's fraudulent intent justifying denial of her discharge.

### B. Objection to Dischargeability[58]

AHP objects to the dischargeability of the Edwards's debt to it, citing Bankruptcy Code section 523(a)(2)(A) and (B). AHP contends that Edwards knowingly misrepresented the amount of fire insurance proceeds available to her to pay the settlement with AHP. It claims she made these misrepresentations in written state court discovery responses and orally at hearings leading up to the parties' 2016 settlement. Edwards denies AHP's allegations.

AHP bears the burden of proving by a preponderance of evidence that its debt is nondischargeable.[59]

#### 1. Section 523(a)(2)(A)

Bankruptcy Code section 523(a)(2)(A) excepts from discharge debts for money or services obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition."[60] This section specifically excludes "statement[s] respecting a debtor's … financial condition."[61] The Supreme Court defines such statements as those having "a direct relation to or impact on the debtor's overall

---

[58] Although denial of Edwards's discharge arguably moots AHP's objection to the dischargeability of its debt under section 523, AHP's complaint merits a ruling in the event of an appeal.

[59] *Selenberg v. Bates (Matter of Selenberg),* 856 F.3d 393, 397 (5th Cir. 2017) (quoting *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

[60] 11 U.S.C. § 523(a)(2)(A).

[61] *See Lamar, Archer & Coffrin, LLP v. Appling*, 138 S.Ct. 1752, 1758-59, 201 L.Ed.2d 102 (2018); 4 COLLIER ON BANKRUPTCY ¶ 523.08 (Richard Levin & Henry J. Sommer eds.,16th ed. 2020).

financial status," including statements "about a single asset bear[ing] on a debtor's overall financial condition."[62]

Whether Edwards had insurance proceeds to pay AHP is a "statement respecting [her] financial condition" because it "has a direct relation to or impact on [her] overall financial status."[63] Thus, section 523(a)(2)(A) is inapplicable and is not a basis for concluding that the debt to AHP is nondischargeable.

### 2. Section 523(a)(2)(B)

Bankruptcy Code section 523(a)(2)(B) governs dischargeability challenges based on written statements respecting a debtor's financial condition. That provision excepts from discharge debts for money or services obtained by

> use of a statement in writing—
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
> (iv) that the debtor caused to be made or published with the intent to deceive….[64]

A material omission from a written financial document also falls under section 523(a)(2)(B).[65]

AHP's claim is that Edwards misrepresented her ability to fund the settlement in a writing three times: (1) at a deposition on February 27, 2013; (2) in a written response to discovery on

---

[62] *Lamar, Archer & Coffrin, LLP v. Appling*, 138 S.Ct. at 1761.

[63] *Id.*

[64] 11 U.S.C. § 523(a)(2)(B).

[65] *See In re Hickerson*, 2019 WL 2307131, at *3 (Bankr. M.D. La. 2019) (a material omission from a loan application can be a false statement under section 523(a)(2)(B)).

August 21, 2014; and (3) in agreeing to settle at the state court hearing on August 2, 2016.[66] These writings are discussed in turn.

### a. Transcript of February 27, 2013 Deposition

The Supreme Court has held that section 523(a)(2)(B) does not apply to oral statements.[67] AHP asserts that written transcriptions of statements made orally at depositions satisfy the writing requirement of section 523(a)(2)(B).[68]

"As long as the written statement is written, signed, adopted or used by the debtor, the basic precondition concerning the writing requirement … is met."[69] Thus if a debtor orally gives financial information that a creditor transcribes onto a form, and later reviews and signs the form, the form is a written statement by the debtor for the purposes of section 523(a)(2)(B).[70]

Because AHP did not seek to introduce a transcript of the February 27, 2013 deposition into evidence and offered no other proof at trial that Edwards adopted a transcript as her written statement, it cannot rely on the deposition testimony to prove its claim.[71]

### b. Written Discovery Response on August 21, 2014

AHP's supplemental request for production no. 3 called for Edwards to "provide copies of any written records documenting all insurance draws made by [her] with respect to the house at

---

[66] AHP's Post-trial Brief [P-88, pp. 6-7].

[67] *Lamar, Archer & Coffrin, LLP v. Appling*, 138 S.Ct. at 1764.

[68] AHP's Post-trial Brief [P-88, p. 9].

[69] *Cadle Co. v. Orsini*, 2007 WL 1006919, at *5 (E.D. Tex. 2007) (*citing Insouth Bank v. Michael (In re Michael),* 265 B.R. 593, 598 (Bankr. W.D. Tenn. 2001)).

[70] *See Cadle Co. v. Orsini*, 2007 WL 1006919, at *5 (citing *In re Michael*, 265 B.R. 593).

[71] AHP cites the process under La. Code Civ. P. art. 1445 allowing a deponent to review, correct and sign a deposition transcript, but offered no proof that Edwards did so. Thus, this ruling does not resolve whether a deposition transcript is a writing for purposes of 11 U.S.C. § 523(a)(2)(B).

issue."[72]  Edwards responded in writing: "This has already been given to you.  You returned a copy to us in our requests for Production just prior to this."[73]

AHP argues that Edwards's response was false because Edwards had only given AHP copies of records showing draws from insurance proceeds totaling $56,214.58,[74] leaving $99,865.78 of insurance proceeds in escrow with Edwards's mortgage company.  But the evidence established—indeed, Edwards admitted—that she had drawn an additional $55,547.94 of insurance proceeds on July 27, 2010, leaving only $44,317.84 in escrow.[75]

At trial, Edwards testified that she had provided AHP copies of every check she received from insurance, including the $55,547.94 draw, and her discovery response that "[t]his has already been given to you" reflects that.  Although AHP argues that it did not receive a copy of the $55,547.94 draw before settling with Edwards on August 2, 2016, AHP offered no evidence to rebut Edwards's testimony.[76]

AHP did not prove that Edwards's written discovery response was false.

### c.  Transcript of August 2, 2016 Hearing

AHP alleges that Edwards's agreement at the hearing on August 2, 2016 that she would pay $75,000 within 30 days was a written misrepresentation of her ability to pay.

---

[72] Edwards's Answers to Interrogatories and Second Supplemental Request for Production dated August 21, 2014 [AHP Exhibit P-9, p. 4].

[73] *Id.*

[74] The first draw of $56,214.58 was dated February 15, 2010 and made payable to Scurria and Edwards.  Testimony revealed that Edwards paid $50,000 of that draw to AHP and $6,500 to a contractor who leveled the land.

[75] Check dated July 27, 2010 in the amount of $55,547.94 payable to Michael Scurria and Catherine Edwards by GMAC Mortgage [AHP Exhibit P-30A].  Edwards testified that she requested the $55,547.94 draw to fix her old burned home because she was tired of living in a small storage building on the property while AHP was building the new home.

[76] AHP did not call a witness to contradict the testimony of Edwards, who was the sole trial witness.

AHP cites Louisiana Civil Code article 3072 to support its argument that the transcript of the August 2, 2016 hearing is a writing by the debtor for purposes of section 523(a)(2)(B). That article reads, "A compromise shall be in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings."

Section 523(a)(2)(B) is explicit that for "money, property, or an extension, renewal, or refinancing of credit" to be nondischargeable, it must be obtained by "use of a false statement *in writing*."[77] "The requirement of a writing is a basic precondition to nondischargeability under section 523(a)(2)(B)."[78] The United States Supreme Court in *Lamar, Archer & Coffrin, LLP v. Appling* recognized that Congress intentionally "set forth heightened requirements for rendering nondischargeable 'statements respecting the debtor's financial condition.'"[79]

For a document a debtor herself has not written to satisfy the writing requirement of section 523(a)(2)(B), the written statement must be "signed, adopted or used by the debtor."[80] Neither Louisiana nor federal law afford litigants the opportunity to review, correct and sign a transcript. Nor is there any indication that Edwards adopted the August 2, 2016 hearing transcript: the parties' dispute over the wording of the consent judgment tends to corroborate that conclusion.

---

[77] 11 U.S.C. § 523(a)(2)(B)(i) (emphasis added).

[78] 4 COLLIER ON BANKRUPTCY ¶ 523.08[2][a] (Richard Levin & Henry J. Sommer eds.,16th ed. 2020) (citations omitted).

[79] *Lamar, Archer & Coffrin, LLP v. Appling*, 138 S.Ct. at 1764 (quoting *Field v. Mans*, 516 U.S. 59, 76-77, 116 S.Ct. 437 (1995)). "The heightened requirements … reflect Congress' effort to balance the potential misuse of such statements by both debtors and creditors." *Lamar, Archer & Coffrin, LLP v. Appling*, 138 S.Ct. at 1763 (finding that an oral statement by a debtor that he had not received his tax refund did not satisfy the writing requirement of section 523(a)(2)(B)).

[80] *Cadle Co. v. Orsini*, 2007 WL 1006919, at *5 (E.D. Tex. 2007) (*citing Insouth Bank v. Michael (In re Michael)*, 265 B.R. 593, 598 (Bankr. W.D. Tenn. 2001)).

AHP urges a leap from Louisiana law allowing the transcription of a settlement made on the record to satisfy Louisiana's requirement of a written settlement to use of that transcript to satisfy the purposely heightened writing requirement in 11 U.S.C. §523(a)(2(B). But AHP points to no support for its position, likely because the few reported decisions on point support the opposite conclusion: that a hearing transcript is not a writing for purposes of section 523(a)(2)(B).[81]

The transcript of the August 2, 2016 hearing is not a written statement within the meaning of Bankruptcy Code section 523(a)(2)(B), even if Edwards's statement were untruthful.

### 3. Conclusion of Objection to Dischargeability

AHP has not met its burden of proof under section 523(a)(2)(A) or (a)(2)(B).

## III. Ruling

Catherine Edwards is not entitled to a discharge because she knowingly and fraudulently made a materially false representation in her schedules as to her interest in and the value of her property as well as failing to schedule the Contract to Partition Property & Purchase Agreement as an executory contract affecting her property.

Edwards's debt to AHP is dischargeable because AHP has not carried its burden of proof under Bankruptcy Code section 523(a)(2)(A) or (a)(2)(B).

Baton Rouge, Louisiana, November 13, 2020.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[81] *Buchanan v. Pellerin (In re Pellerin)*, 2017 WL 979020, at *7 (Bankr. S.D. Miss. 2017) (holding that a trial transcript was "not a writing which would be actionable under § 523(a)(2)(B)"); *DirecTV, Inc. v. Figler (In re Figler)*, 407 B.R. 181, 192 (Bankr. W.D. Pa. 2009) (holding that although a transcript showed fraud, it was not a written statement of the debtor's financial condition).